**A. J. WEST, Appellant,**

**v.**

**Andrew MELLO, Appellee.**

**No. 6945.**

Court of Civil Appeals of Texas.

Beaumont.

Feb. 1, 1968.

Rehearing Denied Feb. 28, 1968.

King, Sharfstein & Rienstra, Beaumont, for appellant.

Ernest L. Sample, Beaumont, Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, for appellee.

PARKER, Justice.

This is a common law damage suit brought by Andrew Mello against appellant, A. J. West. West died and his surviving wife, Grace West, and heir, A. J. West III, were substituted as defendants in the trial court. The plaintiff, Mello, recovered judgment as a result of personal injuries sustained by him while employed by Reynolds Southwestern Company on a seismograph expedition near Alvin, Texas. Mello was injured when he fell from or was knocked from a wagon, carrying seismograph equipment operated by him, when the two mules pulling the wagon ran away. This wagon and mules were owned by A. J. West. He agreed to carry personnel and equipment of Reynolds Southwestern Company with his wagons, mules and drivers. The Aetna Casualty & Surety Company intervened in the suit, seeking recovery from the West defendants of workmen's compensation for the injury and medical benefits it had paid Mello as insurer for Mello's employer because of the injuries he sustained in this accident. Trial was to a jury and, upon the jury verdict, judgment was entered in favor of Mello for $50,720.-86, of which sum the Aetna Casualty & Surety Company was awarded its subrogation interest of $10,035.86. From that judgment, the surviving wife of A. J. West, Grace West, and the son, A. J. West III, have appealed. Andrew Mello will be called plaintiff and the Wests will be called defendants.

The judgment of the trial court is affirmed.

In answer to the special issues numbered below, the jury found:

*Special Issue No. 1:* The mule driver in charge of the wagon occupied by Mello

at the time of his injuries was acting within the scope of his employment with A. J. West.

*Special Issue No. 2*: The mule driver of the wagon occupied by the plaintiff on or about November 9, 1959 left the mules unattended while the plaintiff was in the doghouse.

*Special Issue No. 3*: Leaving the mules unattended was negligence.

*Special Issue No. 4*: Such act inquired of in No. 2 and No. 3 was a proximate cause of injuries to Mello.

*Special Issue No. 5*: The driver of the mule team hitched to the wagon occupied by Mello failed to warn Mello that he was leaving said mule team unattended.

*Special Issue No. 6*: The failure of the driver to warn Mello he was leaving said mule team unattended was negligence.

*Special Issue No. 7*: Such negligence found in No. 6 was a proximate cause of injuries to Mello.

*Special Issue No. 8*: As Mello started the gas motor in question, the plastic cover of said motor did not become entangled in said motor.

*Special Issue No. 10*: Mello did not fail to keep a proper lookout for his own safety immediately before the wagon began to move forward prior to the accident in question.

*Special Issue No. 12*: Mello started the gas motor in question while the mules were hitched to the wagon he was occupying.

*Special Issue No. 13*: Starting the gas motor was not negligence.

*Special Issue No. 15*: When the wagon which Mello was occupying began to move forward immediately before the accident, Mello was inside the doghouse.

*Special Issue No. 16*: When the wagon began to move forward, Mello did not remain in the doghouse.

*Special Issue No. 17*: Failing to remain in the doghouse was not negligence.

*Special Issue No. 19*: After the wagon began to move forward, Mello attempted to move to the rear of the wagon.

*Special Issue No. 20*: Mello moving to the rear of the wagon was not negligence.

*Special Issue No. 22*: After the wagon began to move forward, Mello hollered at the mules.

*Special Issue No. 23*: Hollering at the mules was not negligence.

*Special Issue No. 25*: The occurrence was not the result of an unavoidable accident.

A. J. West had the power to fire and hire the mule skinners, and the mule skinners were his employees. His chief mule skinner, Archie Sonnier, made his report to A. J. West and not to Reynolds Southwestern. The seismograph crew of Reynolds Southwestern had to be transported by mules and wagons in the area where they were working. On the occasion in question, the wagon on which Mello was riding stopped at a point some 150 to 300 feet away from where another wagon with drilling equipment was located. At the drill wagon site, a hole was being drilled in which a recording instrument in the wagon for Mello would be placed by him so that the seismograph recording instrument would pick up the tremor from an explosion elsewhere. Mello was an instrument man. On his wagon was a doghouse to house his instrument, equipment and materials. Thereon was a motor for a generator running before and after the wagon stopped in order to get a good charge on the batteries. When Mello went into the doghouse to check his instruments and mix his developer, the mule skinner to this wagon was present. While in the doghouse, he felt the wagon jerk, saw the reins dragging on the ground. Looking out the door, he saw the driver, an employee of West, running toward the runaway team from the shot point 150 to 300 feet away. Leaving the doghouse, he

was thrown from the wagon and received his injuries while the driver of his wagon was running from the shot point toward Mello's wagon and mules. The reins controlling the mules were not in the driver's or anyone else's hands. The mules were not tied. The mules were not unhitched. The recorder wagon would have been moved up to the shot point after the completion of the hole. A. J. West gave instructions for all of the drivers to stand by and hold the teams at all times while they were hitched to the wagons. Mello testified the mules ran some 500 feet.

■ The defendants, in effect, contend that a mule skinner or driver employed to attend the mules is a man attending the mules in the sense that he was a spectator with no responsibility of any kind. In this case, we have an instrument man who was injured being transported by wagon and mules and a driver, all furnished by West. The driver was a professional mule driver. Mello was a technical instrument man with a seismograph crew. To care for the mules or to attend the mules plainly meant the driver was charged with ordinary care to control the mules so that the passenger Mello would be safe. Attend means to care for professionally. Unattended means not cared for professionally.

A. J. West owned these wagons and mules. He employed the mule skinners. A. J. West agreed to furnish the wagons and mules, together with the mule skinners, to Reynolds Southwestern to carry their employees and equipment. This was a service.

■ Defendants have no-evidence points directed at the finding of the jury in answer to Special Issues Nos. 1, 2, 3, 4, 6, 7, 8, and 20, and insufficient evidence points directed at Special Issues Nos. 1 through 8, both inclusive. In considering the no-evidence points, the evidence favorable to the respective findings of the jury are considered. Each and all of the no-evidence points are overruled. In consider-ing the insufficient evidence points, all of the evidence in the entire record is con-sidered. The insufficient evidence points are overruled.

■ Defendants contend that, as a matter of law, A. J. West, his agents, servants, and employees, breached no duty owing unto plaintiff on the occasion in question. Defendants' points of error so contending are overruled.

■ In numerous points of error, Defendants contend that there is no evidence showing that A. J. West, his agents, servants, and employees, owed any duty unto plaintiff on the occasion in question. Each and all of such points of error are over-ruled.

■ Defendants contend that the undis-puted evidence shows, as a matter of law, that on the occasion in question the mule team and wagon occupied by plaintiff were under his control. Each and all of de-fendants' points of error relating thereto are overruled.

■ Defendants contend that there is no evidence that on the occasion in question the mule driver in charge of the recording wagon was under the control of A. J. West, his agents, servants, and employees, in the manner of performing his services on said occasion. Each and all of defendants' points of error relating thereto are over-ruled.

■ Defendants contend that the trial court erred in overruling their objection to the submission of Special Issue No. 2, as it was a comment on the weight of the evi-dence and the same assumed that plaintiff was in the doghouse on the occasion in question, when said fact is controverted un-der the evidence herein. The same con-tention is made as to the submission of Special Issue No. 3. In connection with the answer to the other special issues by the jury, the pleadings, and the entire rec-ord, these points of error are overruled. It was harmless error at the most.

■ Defendants contend the submission of Special Issue No. 8 was evidentiary and constituted only a part of the inquiry in connection with proximate cause, the word "entangled" confused the jury, and that said issue is so narrow an inquiry as to be prejudicial to the defendants as limiting the jury's consideration only to one particular, specific method of contact that could have been made by the plastic cover of the motor. These contentions are without merit and are overruled.

■ In their last point of error, defendants contend the court erred in overruling appellant's objection No. 11 to the submission of Special Issue No. 8a of the court's charge, since same is predicated upon an affirmative to Special Issue No. 8, thus depriving defendants to an individual submission of same. This point of error is overruled.

All of defendants points of error are overruled. The judgment of the trial court is affirmed.